■ GILBERTO RAMOS et al., Respondents, v SANTIAGO W. ROJAS, Appellant. [830 NYS2d 109]—

Order, Supreme Court, Bronx County (Lucy Billings, J.), entered August 31, 2005, which, in an action for personal injuries sustained by plaintiff Ramos when his vehicle struck the rear end of defendant's vehicle, denied defendant's motion for summary judgment dismissing the complaint, affirmed, without costs.

While defendant established a prima facie right to summary judgment with defendant's affidavit and the deposition testimony of the New Jersey state trooper who responded to the scene of the accident, along with the accident report he prepared, plaintiff's submissions in opposition create an issue of fact precluding summary judgment. Ramos testified at deposition that defendant suddenly and without signaling swerved into his lane of travel while the two were proceeding in the same direction at about 40 to 50 miles per hour with virtually no other traffic on the road (see Figueroa v Cadbury Util. Constr. Corp., 239 AD2d 285 [1997]; Yass v Liverman, 233 AD2d 110 [1996]). With regard to the purported admission attributed to him in the police accident report prepared by the state trooper who responded to the scene of the accident, plaintiff testified that he made no such statement at the time, which denial is supported by the evidence tending to show that he was incapacitated in the aftermath of the accident.

The question of whether the accident occurred as defendant described it, and as supported by the police accident report and the trooper's testimony, or whether it occurred as plaintiff described it, is a classic dispute of fact. The statement attributed to plaintiff which he denies having made should not serve as grounds to render his direct testimony describing the accident to be incredible as a matter of law. Rather, the defendant's showing, tending to contradict plaintiff's assertions, raises issues of credibility that should be left to a jury (see Newman v Vetrano, 283 AD2d 264, 264-265 [2001], citing, inter alia, Gangi v Fradus., 227 NY 452, 457 [1920]).

The foregoing renders academic plaintiff's claim that defendant failed to give 20 days' notice of the trooper's deposition, as required by CPLR 3107 and 2103 (b) (2), and plaintiff's argument that the trooper's testimony, which reiterated plaintiff's alleged admission in the police accident report and tended to corroborate defendant's affidavit that traffic was stop-and-go, therefore cannot be presently considered. Whether the trooper's deposition can be used at trial should be decided in the first instance by the trial court.

We have considered and rejected plaintiff's argument that a prior compliance conference order precludes defendant's affida-

vit in support of the motion. Concur—Tom, J.P., Saxe, Buckley and McGuire, JJ.

Sullivan, J., dissents in a memorandum as follows: Plaintiff Ramos sues for personal injuries arising out of a 12:30 A.M., June 4, 2000 accident on the New Jersey Turnpike near interchange 18W, just before the George Washington Bridge. Plaintiff's vehicle, a Lincoln Town Car owned by Hospital Shuttle, Inc., also a plaintiff, struck the rear end of defendant's vehicle, a tractor-trailer, as both vehicles were proceeding northbound in clear and dry weather. At his pretrial deposition, New Jersey State Trooper Ernie Giampietro, testified that, dispatched to the scene after an accident call at 12:34 A.M., he prepared a police accident report, making his entries contemporaneously with his observations. In his report, Giampietro indicated that when he arrived at the scene the traffic was "stopped due to congestion into Int[erchange] 18W." As he testified, "the traffic was [s]top-and-go"; "cars would . . . begin to move, slow down and stop. Move, slow down and stop. This is an area commonly backed up. Going into interchange 18W." The report indicates, and Giampietro's testimony confirmed, that plaintiff told him, "I bent down and took my eyes off the road and when I looked up the truck was stopped. I tried to swerve right to avoid him but couldn't."

Identifying defendant Rojas as the driver of the tractor-trailer, Giampietro indicated in the traffic report, and his testimony confirmed, that Rojas said to him, "I was stopped because of traffic. And traffic began to move. When traffic began to move so did I. I could see the other car coming up in my rear view mirror pretty fast. I tried to accelerate out of his way. I then saw him swerve right to avoid me but he couldn't and he struck me." Giampietro's diagram in the police report recorded the angle of the vehicles at impact, showing that plaintiff's vehicle was moving to the right prior to the collision. The accident occurred in the right lane of a two-lane highway.

In his deposition, taken four years after the accident, plaintiff testified that at the time of the accident there were no vehicles on the road other than his and the tractor-trailer; "[t]here was no traffic." The speed limit was 55 miles per hour (mph). He was driving in the right lane on cruise control at 50 mph. The tractor-trailer passed him 7 to 10 minutes before the accident and remained four or five car lengths ahead of him at all times. He saw no other vehicle on the roadway from that time to the time of impact. During this 7-to-10-minute period, the tractor-trailer, without signaling, pulled in front of him in the right lane. Two or three minutes before the accident, the tractor-

trailer moved back into the left lane. About 10 seconds before the accident, plaintiff testified, the tractor-trailer, for no apparent reason, "moved into [sic] partially into the right lane, at which he locked his brakes, smoke came out of his tires and I had to come to a screeching halt, which I couldn't do, that's when we collided." Plaintiff testified that he tried to get around the truck by swerving out of the way but "hit him with [his] left side" about 10 seconds after he, plaintiff, first began to apply his brakes. There are seeming contradictions in plaintiff's narrative as to when Rojas applied his brakes as well as to when plaintiff, in response to Rojas's braking, applied his brakes. Plaintiff testified that he was rendered unconscious for 14 days as a result of the accident.

The motion for summary judgment dismissing the complaint was supported by Rojas's affidavit, the police accident report account of the accident confirming Rojas's version and containing plaintiff's admission recorded therein, as well as Giampietro's testimony as to his observations and investigation. In opposition, plaintiff argued that he never gave a statement to the police as to how the accident occurred. Supreme Court denied the motion, finding that plaintiff's denial of his admission to State Trooper Giampietro and his testimony that Rojas, without signaling, suddenly crossed over into his lane of traffic rebutted defendant's showing and precluded summary judgment. Because I find that plaintiff's self-serving, tailored deposition testimony is incredible as a matter of law and raises only a feigned issue, I would reverse and grant summary judgment dismissing the complaint.

Although a New Jersey accident is involved, neither party raises a choice of law argument. Presumably the law of New York and New Jersey is similar in the case of rear-end collisions. In such circumstances, we look to New York law (see McCarthy v Coldway Food Express Co., 90 AD2d 459, 461 [1982]), as both parties urge. Vehicle and Traffic Law § 1129 (a) requires drivers to maintain a safe distance between vehicles. A rear-end collision with a stopped vehicle creates a presumption of negligence on the part of the driver of the moving vehicle (Agramonte v City of New York, 288 AD2d 75, 76 [2001]). Concededly, "[t]he frontmost driver also has the duty not to stop suddenly or slow down without proper signaling so as to avoid a collision" (Gaeta v Carter, 6 AD3d 576, 576 [2004] [internal quotation marks and citation omitted]). Here, Rojas established his initial burden on a summary judgment motion with his affidavit, Giampietro's deposition testimony and the relevant portions of the police accident report, including

Ramos's statement as to how the accident occurred, which constitutes an admission that can be used as evidence-in-chief (*see Matter of State Farm Mut. Auto. Ins. Co. v Bermudez*, 111 AD2d 858 [1985]). The burden then shifted to plaintiff to offer a nonnegligent explanation sufficient to raise a genuine issue of fact (*see Emil Norsic & Son, Inc. v L.P. Transp., Inc.*, 30 AD3d 368 [2006]). While ordinarily, a showing that a defendant in such circumstances, suddenly and without signaling, swerved into the plaintiff's lane of traffic might be an adequate, nonnegligent explanation sufficient to defeat summary judgment (*see Yass v Liverman*, 233 AD2d 110 [1996]), plaintiff's current account of the accident is, as two Second Department cases squarely on point have held, nothing more than a belated attempt to raise a feigned issue to avoid the consequences of the police report and his on-the-scene admission of liability (*see Abramov v Miral Corp.*, 24 AD3d 397 [2005]; *Guevara v Zaharakis*, 303 AD2d 555 [2003]). As such, it is insufficient to defeat summary judgment. While plaintiff invites the inference that he could not have given a statement to police because of the severity of his injuries, there is nothing more than his testimony to support such inference. And while the majority finds evidence "tending to show that [plaintiff] was incapacitated in the aftermath of the accident," it is noted that plaintiff's statement was brief—as quoted in the police report, it consisted of only 29 words—and that, according to his own testimony, he was conscious when the ambulance arrived at the scene.

It is axiomatic that issue finding, rather than issue determining, is the function of a court on the disposition of a summary judgment motion (*see Ferrante v American Lung Assn.*, 90 NY2d 623, 630 [1997]). The invocation of that maxim in a fact situation as is here presented, however, makes the judiciary a slave to the proposition. Trooper Giampietro's testimony conforms to his accident report. No motive has been shown or suggested as to why he would make and file a false report, as is alleged. Blind acceptance of the notion that any factual issue, no matter how contrived or self-serving in the circumstances presented, is sufficient to defeat summary judgment, in my view, asks too much.