Biaca-Neto v Boston Rd. II Hous. Dev. Fund Corp. (2019 NY Slip Op 06142)





Biaca-Neto v Boston Rd. II Hous. Dev. Fund Corp.


2019 NY Slip Op 06142


Decided on August 13, 2019


Appellate Division, First Department


Tom, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 13, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

John W. Sweeny, Jr., J.P.
Sallie Manzanet-Daniels
Judith J. Gische
Peter Tom
Peter H. Moulton,JJ.


650018/15 

[*1]Waldemar Biaca-Neto, et al., Plaintiffs-Appellants,
v
Boston Road II Housing Development Fund Corporation, et al., Defendants-Respondents.



Plaintiffs appeals from the judgment of the Supreme Court, New York County (James E. d'Auguste, J.), entered May 7, 2018, dismissing the action, and from the order of the same court and Justice, entered April 5, 2018, which denied plaintiffs' motion for partial summary judgment as to liability on the Labor Law § 240(1) claim and granted defendants' motion for summary judgment dismissing the complaint.




Law Offices of Lawrence P. Biondi, Garden City (Lisa M. Comeau and Lawrence B. Biondi of counsel), for appellants.
Kaufman Borgeest & Ryan LLP, Valhalla (Jacqueline Mandell and Rebecca Barrett of counsel), for respondents.



TOM, J.


The main focus of our appellate review addresses where to locate the boundaries of a defendant's responsibilities under Labor Law § 240(1) when a worker is injured upon exiting a scaffold by an impermissible means when a safe mode of exit is readily available. The record evidence amply supports the motion court's conclusion that defendants cannot be held liable for plaintiff Waldemar Biaca-Neto's (plaintiff) injuries under the Scaffold Law.
Plaintiff was employed by nonparty subcontractor Advance Contracting Solutions LLC (ACS). The property owners were the defendants Boston Road Housing entities, which hired [*2]defendant Mountco Construction and Development Corp. as general contractor, which hired ACS to undertake concrete and masonry work. Plaintiff's tasks included assembling scaffolds. At the time of the accident, plaintiff and a coworker, Fabio DeSilva, were working on the assembly of an exterior scaffold at the seventh- floor level of the building being constructed. The platform of the scaffold was reached by a scaffold staircase, which plaintiff used on the morning of his accident, and a worker could also ascend and descend the scaffold by means of a hoist. Plaintiff wore a lifeline attached to a harness to protect him from falls, and the perimeter of the scaffold was enclosed by protective framing and basketing to catch any falling objects. No evidence was submitted to establish that the scaffold was improperly constructed or that necessary safety devices were unavailable.
Plaintiff's supervisor, Leandro Andrade, testified that the interior of the building was easily reached by a worker descending the scaffold staircase, then ascending interior stairways to whichever level inside the building was the destination. Mario Condeza, Mountco's assistant project superintendent, who regularly performed walk-throughs at the project, testified that window cuts on the building were designated as safety control zones where workers were not allowed, absent permission from a work site safety manager, and that workers specifically were not allowed to enter the interior of the building from a scaffold through a window but, rather, were supposed to descend the scaffold staircase and enter the building. Condeza further testified that he was unaware of workers using such a shortcut and that any worker who climbed through a window would have been removed from the job site. Moreover, he testified, he had heard the daily site safety manager, Charles Weissman, during a weekly site safety meeting, give an instruction that workers were not to enter the building's interior through any window opening.
Plaintiff was injured while on the scaffold on September 3, 2014. His account as to how this occurred changed over time, and his version on appeal is refuted by both documentary and testimonial evidence.
DeSilva, plaintiff's coworker, testified that Andrade directed from inside the building that he wanted plaintiff and DeSilva to work on the other side of the building. Rather than descending the scaffold staircase or descending by the hoist, DeSilva climbed onto the scaffold's frame to enter through the window cut-out, which was about two steps above the frame of the scaffold. When DeSilva was inside the building he heard plaintiff call out. He then observed plaintiff standing on the metal scaffold frame that DeSilva had just used to enter through the window cut-out. Plaintiff told him that he had "popped" his shoulder in pulling himself up the scaffold in order to follow DeSilva through the window. Andrade and DeSilva helped plaintiff through the window cut-out, then down to the office. Since plaintiff was not conversant in English, DeSilva related to Michelle Miller at the office that plaintiff had injured his shoulder by pulling himself up on the scaffold. Miller included the statement in the incident report, and DeSilva signed it. The statement, related from plaintiff through DeSilva, explained: "I was passing [through] scaffold [,] reached up to hold scaffold and my arm popped. The same thing happened to my left shoulder a while ago." The report identified Andrade and DeSilva as witnesses. Miller's own report documented that plaintiff "came into trailer with Leandro Andrade and advised me as he was walking passing [sic] [through] scaffold he reached his arm out and his shoulder popped and he could not move it. I asked him if he fell, was carrying anything heavy and he said no." Eoin O'Mahoney, a construction supervisor, testified that he was with Miller when plaintiff and Andrade reported the incident. He heard Andrade, interpreting into English for plaintiff, relate to Miller that plaintiff injured his right shoulder when he reached for a bar on the scaffold to enable him to enter through the window cut-out. O'Mahoney also confirmed that when Miller asked whether plaintiff fell, Andrade, responding for plaintiff, answered in the negative.
Andrade testified that plaintiff related to him after the incident that when he reached up to [*3]hold onto a bar on the scaffold with the intent of climbing through the window cut-out, he pulled his right shoulder out of its socket, but that plaintiff had not claimed to have fallen. Andrade testified that he had never advised workers to enter the building interior through a window cut-out.
The September 6, 2014 site safety log compiled by Weissman documented that "ACS laborer reportedly reinjured a dislocated shoulder" - again, no fall. The September 8, 2014 accident report prepared by Condeza related that "one of the ACS Construction laborer[] installing scaffolding dislocated his shoulder and went to the hospital . . . . " Emergency room documentation related plaintiff's explanation that he had been "pulling something heavy off of a shelf," causing a dislocation of his right shoulder and that he "popped" his own shoulder back into place after which he walked around. The September 23, 2014 workers' compensation form reflected that plaintiff dislocated his right shoulder "while moving from scaffold into building."
Plaintiff's subsequent theory before the motion court was that he climbed onto the scaffold frame in order to enter the building through the window cut-out and that he fell backwards and suffered injuries to his spine and shoulders, eventually requiring spinal fusion and incapacitating him from work. Plaintiff gave this version of the accident during his deposition. He described the platform of the scaffold as three side-by-side 5-foot-wide platforms totaling 15 feet in width, with the scaffold framing continuing well above the platform. The steel beam securing the scaffold to the building was seven feet above the platform. A protective wooden railing formed the perimeter of the scaffold. The steel beam was about two feet above the bottom of the window cut. Describing himself as five feet, eight inches, plaintiff testified that the bottom of the window was about three or four feet above his head.
Plaintiff claimed that Andrade directed him and DeSilva to work in the back of the building since the "brick guys" would be using the scaffold, and, following DeSilva, he climbed onto the beam from the frame around the scaffold to enter the building through the window. He knew that he was not supposed to enter the building from the scaffold through the window. Before the accident, he was wearing a lifeline, which he took off in order to climb up onto the beam. Plaintiff claimed that he slipped as he stepped from the beam to the window and fell onto the platform, hitting his head and dislocating his shoulder. He also claimed that there had been some oil, which he had used to lubricate the screws when assembling the scaffold, on the beam, without, however, claiming that he slipped on the oil. DeSilva, by contrast, testified that he had not observed any oil on the scaffold.
Plaintiff's deposition testimony that his injuries were caused by a fall is contradicted by his earlier statements made to coworkers immediately after the incident and recorded in various reports of the accident including the accident report, emergency room report and plaintiff's workers' compensation form. When asked why the emergency room medical records reflected that plaintiff had only right shoulder pain whereas he was claiming additional injuries and pain, he professed to be surprised, since a neck collar had been placed on him and he was given morphine. The dissent, conceding that plaintiff's statements as recounted by several other people and recorded in various reports of the accident appear to contradict his deposition testimony, nevertheless concludes that the contradictions are reconcilable, and attempts to reconcile them. I disagree. To the extent plaintiff attempts to construct a counter narrative of how he sustained his injury, I reject it. Plaintiff's new contradictory testimony should not be considered in deciding this summary judgment motion (see Caraballo v Knightsbridge Apt. Corp., 59 AD3d 270 [1st Dept 2009]; Capraro v Staten Is. Univ. Hosp., 245 AD2d 256 [2d Dept 1997]). In any event, missing from plaintiff's narrative even as modified, aside from an ambiguous unsupported intrusion of oily screws having little apparent connection to the alleged fall, is any evidence of any demonstrable defect in the scaffold itself or that plaintiff's alleged injuries were related to unavailable safety devices, the pertinent factors for determining Labor [*4]Law § 240 liability (see Narducci v Manhasset Bay Assoc., 96 NY2d 259 [2001]).
The dissent's contention that we, the majority, and Supreme Court, have ignored a coworker's claim that he observed plaintiff's fall and that we are not considering a factual issue, is addressing a matter that is not relevant in terms of the requirements for finding liability under section 240. A fall or an injury on a scaffold by itself does not automatically implicate section 240 liability. To invoke section 240, an appropriate safety device must be lacking or defective, thereby exposing workers to elevation-related risks, and must have proximately caused the worker's injuries (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 500-501 [1993]; Nieves v Five Boro A.C. & Refrig. Corp., 93 NY2d 914 [1999]). As noted, plaintiff testified that he fell while, on his own volition, trying to climb the frame of a non-defective scaffold, which does not establish Labor Law § 240 liability.
Even if plaintiff's present account of the accident is accepted at face value, it does not avail him, because it fails to connect to any defect in a required safety device. Plaintiff's decision to climb onto a beam seven feet above the platform to enter an interior location where he was not working by a means he conceded he knew was inappropriate, when the obvious, safe and compliant means of egress was the scaffold's stairway, which he himself had assembled, did not implicate Labor Law § 240.
The dissent contends that because workers might have climbed through the window openings, a safety device was required to allow them to do so safely. This sidesteps the record evidence that workers were prohibited from doing so. The dissent thus proposes that, in effect, a defendant must anticipate that a worker will disobey instructions and accordingly must undertake to provide additional precautions to safely facilitate the prohibited conduct. Labor Law § 240(1), which imposes safety requirements to protect workers exposed to elevation-related risks within the scope of their employment, imposes no such obligation on owners and general contractors [or defendants]. As a practical matter, such a non-statutory obligation would be unreasonably open-ended, requiring defendants to anticipate and address any number of potential areas of what must be seen as misconduct by workers, and then imposing strict liability should any be overlooked.
In any event, the short-cut taken by plaintiff was not overlooked - it was prohibited specifically because it presented dangers that were outside the scope of the assigned tasks, and alternative, safe, modes of access and egress were available. Felker v Corning Inc. (90 NY2d 219 [1997]) and Orellano v 29 E. 37th St. Realty Corp. (292 AD2d 289 [1st Dept 2002]), which address the inadequacy of a safety device protecting a worker who was overreaching from a ladder to, respectively, paint and install a light fixture, do not support the dissent's point with respect to the facts of this case. Nor does the dissent's reliance on Hernandez v Argo Corp. (95 AD3d 782 [1st Dept 2012]), where the configuration of the scaffold assigned to the worker required him to regularly cross an open and unguarded three-foot gap in the scaffold. Plaintiff stepped outside of his assigned work when he unhooked his safety harness and climbed up on the scaffold frame to enter through the window opening in violation of work rules, for the sake of saving the few minutes that would be expended by using the safe and proper access devices. Whether or not he did so knowledgeably or was simply following another worker is not a valid basis to attribute responsibility to the defendants. Nimirovski v Vornado Trust Co. (29 AD3d 762 [2nd Dept 2006]), cited by the dissent, where the scaffold on which the worker stood was inadequate to withstand the shock of a falling object, causing it to shake and the worker to fall, is similarly inapposite both factually and legally.
Plaintiff's claim was correctly dismissed because defendants demonstrated as a matter of law that plaintiff's injury was not proximately caused by a violation of section 240(1). Plaintiff's own actions were the sole proximate cause of his injuries. Plaintiff conceded that scaffold stairs were available to him to descend several floors and reenter the building. Further, as already noted, he admitted during his deposition that he knew he was not supposed to climb through the [*5]window and that it would have been safer to use the scaffold stairs. On appeal, he essentially argues, inter alia, that reentry via the scaffold stairs would have taken more time and would have been an inconvenience. Plaintiff also admitted to unhooking his safety line in order to climb through the window cut-out. Under the circumstances, adequate safety devices were available for plaintiff's use at the job site, and his own actions in unhooking his safety line and climbing through the window were the sole proximate cause of his injuries (see Robinson v East Med. Ctr., LP, 6 NY3d 550, 554-555 [2006]; Montgomery v Federal Express Corp., 4 NY3d 805 [2005]; Egan v Monadnock Constr., Inc., 43 AD3d 692, 693 [1st Dept 2007], lv denied 10 NY3d 706 [2008]).
Because plaintiff's actions were the sole proximate cause of his injuries, the claims for common-law negligence and violation of Labor Law § 200 were also properly dismissed (Comes v New York State Elec. & Gas Corp., 82 NY2d 876 [1993] [Labor Law § 200]; Salvador v New York Botanical Garden, 71 AD3d 422, 423 [1st Dept 2010] [common-law negligence]).
Plaintiff also failed to raise an issue of fact as to a violation of the Industrial Code, as required to support the claim under Labor Law § 241(6) (see Griffin v Clinton Green S., LLC, 98 AD3d 41, 49 [1st Dept 2012]). Industrial Code (12 NYCRR) § 23-1.7(d), which requires that an employer "not suffer or permit any employee to use a floor, passageway, walkway, scaffold, platform or other elevated working surface which is in a slippery condition," clearly does not include a crossbar, such as the one from which plaintiff allegedly slipped, because it is limited to "working surfaces." While a scaffold platform on which workers stand and work would seemingly come within the provision, structural crossbars which simply hold the scaffold together are not working surfaces required for standing or walking (cf. Doyne v Barry, Bette & Led Duke, 246 AD2d 756, 759 [3rd Dept 1998] [bar joists, which plaintiff was required to traverse, may qualify as an " elevated working surface'"]). The remaining sections of the Industrial Code upon which plaintiff relies also do not apply to this case.
Finally, even if there were a basis for imposing liability on defendants, plaintiff Calina Neto's claim for loss of consortium could not be determined on this record (see Diarrassouba v Consolidated Edison Co. of N.Y. Inc., 123 AD3d 525 [1st Dept 2014]).
Accordingly, the judgment of the Supreme Court, New York County (James E. d'Auguste, J.), entered May 7, 2018, dismissing the action, should be affirmed, without costs. The appeal from the order of the same court and Justice, entered April 5, 2018, which denied plaintiffs' motion for partial summary judgment as to liability on the Labor Law § 240(1) claim, and granted defendants' motion for summary judgment dismissing the complaint, should be dismissed, without costs, as subsumed in the appeal from the judgment.
All concur except Manzanet-Daniels, and Moulton, JJ. who dissent in part in an Opinion by Moulton, JJ.




MOULTON, J. (dissenting in part)


I respectfully dissent from the majority's affirmance of the dismissal of the Labor Law § 240(1) claim.
The majority implicitly finds that unsworn statements given by plaintiff, transcribed by others into English, a language plaintiff did not speak, that set forth a version of the accident different from the account plaintiff gave at his deposition, are sufficient to find plaintiff wholly unbelievable. According to the majority, these discrepancies warrant summary judgment in defendants' favor. In so holding, the majority gives little weight to the affidavit by a coworker who was the only eyewitness to the accident and who supports plaintiff's only sworn account of his fall. While inconsistencies in plaintiff's other unsworn reports of the accident might provide [*6]grist for cross-examination, it is for the jury, not this Court, to resolve these inconsistencies.
Even crediting plaintiff's sworn account of his fall, the majority still finds that Labor Law § 240(1) is inapplicable because plaintiff has failed to show that the scaffold was lacking or defective. This finding ignores the evidence in the record that workers on this job site used the scaffold to go through window cut-outs to enter the interior of the building and that the scaffold was clearly inadequate for that purpose. Finally, the majority finds that plaintiff was the sole proximate cause of his injury. That conclusion rests on a resolution of triable issues of fact that should be left to the jury.
On the date of the accident, plaintiff Waldemar Biaca-Neto was on his third day on the job, which involved the construction of a new multistory building located at 1191 Boston Road in the Bronx. Plaintiff was working for subcontractor Advanced Construction Solutions LLC (ACS), which was erecting exterior scaffolding. On the morning in question he followed fellow ACS worker Weslie Fabio DeSilva up an interior staircase to the building's third floor, where they moved to the exterior scaffolding and continued to ascend via the scaffold's staircase to a platform that was adjacent to, but not even with, the seventh floor. Soon thereafter, the two men were called inside the building by ACS supervisor Leandro Andrade. Plaintiff watched DeSilva pull himself up to a scaffold beam or crossbar that was approximately seven feet above the scaffold platform, unhook his safety belt, and enter the building through a window cut-out.
Plaintiff attempted to follow DeSilva, but in pulling himself up to the window cut-out, plaintiff asserts, he slipped and fell to the scaffold platform, which caused his injuries. Neither DeSilva nor Andrade was facing plaintiff, and neither man witnessed what happened.
Plaintiff conceded at his deposition that in response to Andrade's summons he could have gone down the way he had gone up, reentered the building's interior at the third floor, and then ascended via the interior staircase to join Andrade and DeSilva. At his deposition he testified, "I decided to follow the experience of someone who was working there longer. Fabio went there and I went after that." For his part, DeSilva testified that he assumed that plaintiff would follow him and that workers frequently moved from the scaffold platforms through window cut-outs into the building's interior. At his deposition DeSilva testified that the alternatives, to descend via a hoist or to walk down the scaffold staircase, and then ascend the building's interior staircase, would "take like ten minutes," and "nobody is going to do that."
Another ACS worker, F. Martin Agualema, submitted an affidavit in which he states that he observed plaintiff fall in the manner described by plaintiff at his deposition. Aqualema, like DeSilva, attested that he and his fellow workers used the window cut-outs to enter the building from the scaffold.
Andrade stated at his deposition that he did not tell the workers to enter through the window cut-out. However, Andrade did not testify that he prohibited them from using this means of ingress, or that he remonstrated with DeSilva for using the window cut-out. Mario Condeza, the assistant project superintendent for general contractor Mountco, stated at his deposition that workers were not permitted to use the window cut-outs to enter the building from the scaffold. The majority notes that Condeza stated that Charles Weissman, who worked for onsite safety manager Creative Environmental Solutions, told supervisors on at least one occasion that they should not allow workers to enter the building through the window cut-outs. However, there was no evidence that the workers themselves were ever told about this alleged prohibition. DeSilva, for his part, states that he was never told about this alleged prohibition. DeSilva's and Aqualema's sworn statements also create an issue of fact as to whether any such prohibition was actually enforced at the work site.
DeSilva testified that after he entered the building he heard plaintiff call for help, stating that he "popped" (i.e., dislocated) his shoulder. Andrade helped plaintiff down to the ground floor via the hoist and took him to the work site office, where plaintiff gave a statement. Plaintiff [*7]did not speak or write English. Andrade translated for plaintiff, and another ACS employee transcribed the translation. The statement says nothing about plaintiff falling, and recites, "I was passing [through] scaffold [sic][,] reached up to hold scaffold and my arm popped. The same thing happened to my left shoulder a while ago."[FN1] At his deposition plaintiff denied telling anyone that his accident consisted solely of dislocating his shoulder when he pulled himself up to the window opening. A statement was prepared for DeSilva, which he signed, that recites that plaintiff "did not fall." However, when shown this statement at his deposition, DeSilva stated that it was prepared for him by ACS personnel, and that he told them that he had not witnessed the accident.[FN2]
In sifting these conflicting facts, Supreme Court privileged defendants' narrative and ignored plaintiff's. Supreme Court found that plaintiff's injury happened when he pulled himself up on the scaffold and thereby dislocated his shoulder. This finding ignores plaintiff's and his coworker Agualema's sworn statements that plaintiff fell onto the scaffold platform after trying to pull himself up to the window cut-out. That plaintiff dislocated his shoulder can be reconciled by his testimony that he fell on his arm, or, alternatively, that he did dislocate his shoulder while pulling himself up and that the dislocation played a role in his falling.
In any event, even if plaintiff's unsworn statements cannot be reconciled with his deposition testimony, it is the jury's job to determine whether either version is true. "Any inconsistencies in the [plaintiff's] several accounts of the incident go to the weight of the evidence, not its competence, and the value to be accorded to the evidence is a matter for resolution by the trier of fact" (Alvarez v New York City Hous. Auth., 295 AD2d 225, 226 [1st Dept 2002] [noting contradictions between plaintiff's testimony at her deposition and at her General Municipal Law § 50-h hearing]). In Clindinin v New York City Hous. Auth., we stated,
"Any discrepancies between plaintiff's General Municipal Law § 50-h and deposition testimony, and his deposition testimony and errata sheet, merely raise credibility issues for the jury to decide. Similarly, the conflict between one of the tenant's written statement and her subsequent affidavit recanting that statement also raises a credibility issue for the jury"
(117 AD3d 628, 629 [1st Dept 2014] [internal citation omitted]; see also Ramos v Rojas, 37 AD3d 291, 292 [1st Dept 2007] ["The statement attributed to plaintiff which he denies having made should not serve as grounds to render his direct testimony describing the accident to be [*8]incredible as a matter of law"]).
Even crediting plaintiff's sworn statement that he fell, the majority holds that Labor Law § 240(1) is not applicable because there is nothing in the record tending to show that the scaffold was defective or that plaintiff's injuries were related to unavailable safety devices.
It is not necessary that the scaffold be defective for plaintiff to recover under Labor Law § 240(1) (Orellano v 29 E. 37th St. Realty Corp., 292 AD2d 289, 290-291 [1st Dept 2002]). So long as the device is not suited to the task at hand, it is not adequate for purposes of Labor Law § 240(1) (see Felker v Corning Inc., 90 NY2d 219, 225 [1997]). Therefore, in the instant case it is sufficient that the scaffold was inadequate to provide safe ingress into the building's interior through the window cut-outs, a purpose for which the record shows it was used by workers on this job site (see Hernandez v Argo Corp., 95 AD3d 782 [1st Dept 2012] [scaffold that required workers to travel across an unguarded gap of three feet was inadequate]; Nimirovski v Vornado Realty Trust Co., 29 AD3d 762 [2d Dept 2006] [scaffold inadequate to protect workers from shaking caused by falling debris that was a foreseeable consequence of the work being performed]). Here, record evidence indicates that the scaffolding was not "so constructed, placed and operated as to give proper protection to a person so employed [in construction]" (Labor Law § 240[1]). Where there is an issue of fact concerning whether a safety device provided adequate protection to workers from gravity-related risks, summary judgment will not lie (see Albino v 221-223 W. 82 Owners Corp., 142 AD3d 799 [1st Dept 2016]).
The majority also agrees with Supreme Court's finding that plaintiff was the sole proximate cause of his injuries because he chose to follow DeSilva into the building via the window cut-out, thereby refusing to use another means of accessing the seventh floor (i.e., by walking down the scaffold stairs and then walking up the building's interior stairs to the seventh floor). The majority also notes that plaintiff removed his safety belt just before he fell, stating that this was also a factor in rendering plaintiff the sole proximate cause of his injuries.
These findings ignore contrary evidence in the record. Plaintiff testified that he had to remove his safety belt in order to go inside the building, just as he observed DeSilva remove his safety belt before entering. Moreover, there is substantial evidence that workers on this job site regularly entered the interior of the building through the window cut-outs. DeSilva and Agualema both provided sworn statements to that effect. Finally, there is no evidence from defendants' witnesses that the workers on the site were instructed not to enter the building from the window openings. Supreme Court was apparently persuaded that the workers had been so instructed by plaintiff's ambiguous deposition testimony in the following passage, which begins with a discussion of plaintiff's removal of his safety belt:
"A. While we were doing the protection, I was holding, I was secured to the safety belt. When we went to — when I went to go I mean to the window that Fabio had already gone through, I removed [the safety belt], I put it on the - on the top of the scaffold. Then I climbed the scaffold on the lateral for me to pass through the window, I had to — I had to disconnect it, because if I had to go through the window who would remove it in the outside? So I disconnect it. I was going — I was about to give - to step I mean to go through the window, and I slipped.
"Q. Go ahead.
"A. That is it, I slipped, I fell, because I was scared, because I wasn't supposed to pass through there. Fabio went, passed through there, and I went to pass through. When I went to pass, I mean and I saw there wasn't a step on the 7th floor, I slipped and I fell on the platform with my arms on the floor. That is when I [*9]dislocated my shoulder."
Defendants seize on plaintiff's statement, "I wasn't supposed to pass through there," but that statement does not prove that he had been told not to use the window cut-outs to enter the building. It may be that this statement was merely an expression of regret, or a retrospective assessment of the danger of entering through the window cut-out. Plaintiff's statement certainly does not cancel out the testimony of Agualema and DeSilva that workers on this job site used the window cut-outs to enter the interior of the building from the scaffold. It also does not make up for the absence of any proof from defendants' witnesses that anyone in a position of authority at the job site told plaintiff that he could not use the window cut-outs to enter the building's interior.
In order for a worker to be the sole proximate cause of his injury due to his failure to use an available safety device, he must know that he is expected to use the available safety device.
"To raise a triable issue of fact as to whether a plaintiff was the sole proximate cause of an accident, the defendant must produce evidence that adequate safety devices were available, that the plaintiff knew that they were available and was expected to use them, and that the plaintiff unreasonably chose not to do so, causing the injury sustained"
(Nacewicz v Roman Catholic Church of the Holy Cross, 105 AD3d 402, 402-403 [1st Dept 2013]). Here there are issues of fact concerning whether plaintiff was told that he was expected to access the building's interior by descending via scaffold stairs or hoist, entering the building, and ascending the interior staircase. There is substantial evidence in the record that the convention at this workplace was to take the shorter, quicker route through the window cut-outs. Accordingly, defendants should not have been awarded summary judgment on their sole proximate cause defense (id.; see also Gallagher v New York Post, 14 NY3d 83, 88-89 [2010]; Przyborowski v A & M Cook, LLC, 120 AD3d 651, 653-654 [2d Dept 2014] [where there was no evidence that anyone instructed the plaintiff to use a concrete staircase, rather than the ladder from which he fell, "plaintiff's exercise of his discretion in connection with whether to use the ladder or the staircase cannot be said to be the sole proximate cause of his injuries"]; Hernandez v 151 Sullivan Tenant Corp., 307 AD2d 207, 207 [1st Dept 2003] ["Inasmuch as defendant points to no immediate instruction to avoid an unsafe practice that plaintiff disobeyed, its attempt to portray him as a recalcitrant worker fails"]).
Because it found that plaintiff's actions were the sole proximate cause of his injuries, Supreme Court also dismissed on that ground plaintiff's claims under Labor Law § 241(6) and under Labor Law § 200 and common-law negligence. On appeal, defendants argue alternative grounds for the dismissal of those claims. I agree that these claims must be dismissed.
Defendants are correct that plaintiff failed to raise an issue of fact as to a violation of the Industrial Code, as required to support a claim under Labor Law § 241(6) (see Griffin v Clinton Green S., LLC, 98 AD3d 41, 49 [1st Dept 2012]). The sections of the Industrial Code cited by plaintiff to provide a basis for section 241(6) liability are either too general or inapposite. In particular, the Industrial Code provisions cited by plaintiff that concern the stability of scaffolds are inapplicable here. While Agualema recites in his affidavit that the scaffold was "unsteady and shaky," plaintiff does not attribute his fall to any movement or instability of the scaffold.
Plaintiff's claims under Labor Law § 200 and common-law negligence also fail as a matter of law. There are no facts in the record that could expose defendant owners Boston Road II Housing Development or Boston Road Housing L.P. to liability under Labor Law § 200 or a [*10]common-law negligence theory. When a worker at a job site is injured as a result of the "means and methods" of the performance of the work, as is the case here, the property owner's liability under Labor Law § 200 and for common-law negligence is determined by whether the property owner had the authority to supervise or control the means and methods of the work (see Canty v 133 E. 79th St. LLC, 167 AD3d 548 [1st Dept 2018]). There is no evidence in the record that the Boston Road defendants had such authority.
Similarly, the mere fact that general contractor Mountco had overall responsibility for the safety of the work done by the subcontractors is insufficient to demonstrate that it had the requisite degree of control and that it actually exercised that control over ACS's workers. Plaintiff testified that he was supervised by Andrade, and that he only worked with fellow ACS workers. While Mountco may have been responsible for ensuring that work was proceeding safely and according to schedule, and Condeza regularly inspected the work site for that purpose and had the authority to stop any work he observed to be unsafe, that general level of supervision is not enough to warrant holding Mountco liable for plaintiff's injuries under a negligence theory (see Alonzo v Safe Harbors of the Hudson Hous. Dev. Fund Co., Inc., 104 AD3d 446, 449 [1st Dept 2013]; Burkoski v Structure Tone, Inc., 40 AD3d 378, 380-381 [1st Dept 2007]).
Plaintiffs make clear in their reply that Calina Neto still maintains her claim for loss of consortium. As this claim is derivative of Mr. Biaca-Neto's, and I find that Mr. Biaca-Neto has a viable claim for personal injury, I would not dismiss Ms. Neto's consortium claim at this stage (see Hazel v Montefiore Med. Ctr., 243 AD2d 344, 345 [1st Dept 1997]).
Judgment, Supreme Court, New York County (James E. d'Auguste, J.), entered May 7, 2018, affirmed, without costs. Appeal from order, same court and Justice, entered April 5, 2018, dismissed, without costs, as subsumed in the appeal from the judgment.
Opinion by Tom, J. All concur except Manzanet-Daniels and Moulton, JJ. who dissent in part in an Opinion by Moulton, J.
Sweeny, J.P., Manzanet-Daniels, Gische, Tom, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: AUGUST 13, 2019
CLERK



Footnotes

Footnote 1:A similar statement appears in plaintiff's workers' compensation application form, which recites, under the question concerning how the accident happened: "[W]hile moving from scaffold into building, puled [sic] and dislocated arm." However, the handwritten statements on this form are in English, a language that plaintiff did not speak or write, and there is nothing in the record concerning who completed the form. The form was not shown to plaintiff at his deposition. In any event, at his deposition plaintiff denied giving anyone this account of his accident.

Footnote 2:Andrade also signed a statement to the effect that plaintiff did not fall. However, it is undisputed that Andrade did not witness the accident.